Louis J. Capozzoli, J.
The plaintiff has brought this action for an injunction and for damages arising out of the alleged invasion by defendants of the plaintiff’s literary and property rights in a dramatic composition. Plaintiff also sought an accounting, but has withdrawn this claim.
Some time prior to February 21, 1934, plaintiff conceived and wrote an original story, which he called “ Menace ”. On the afore-mentioned date he entered into a written contract with Sound City Film, Ltd., in England, whereby amongst other things, it was agreed that the latter was to have:
“1. * * * the sole and exclusive license for fourteen years from the date hereof in all parts of the world to make or authorize the making of cinematograph films of or based on or adapted from the said story or any part thereof and *193 thereby mechanically to reproduce the action, incidents, sounds and words of the said story or any part thereof and to authorize such reproduction and to represent, exhibit and perform, by mechanical means, the action, incidents, sounds and words of the said story or any part thereof and to authorize such representation, exhibition and performance. The sole and exclusive license during the said period of fourteen years, from the day of the date hereof, in all parts of the world, to sell, exhibit, lease, let on hire, rent or otherwise dispose of, deal with or exploit all films (be the same synchronized, sound, singing, talking, orchestrated films or silent) hereafter to be manufactured of or based on or adapted from the same story. * # *
“ 6. The licensees shall be at liberty to publish and exhibit in any languages a brief synopsis or description of the said story as originally written or as adapted (as the case may be) for the said sound film and to use any lines or excerpts from the said story for titles and/or sub-titles and to publish in serial form in any daily or weekly newspaper or magazine, the story of “ Menace ” with illustrations from the film. * * *
‘ ‘ 7. The author grants the licensees the right to use the said story for the purpose of broadcasting by any wireless or telephonic methods.
“ 8. The licensees shall be entitled to exploit and deal with the said film in all parts of the world, as they may in their absolute discretion determine, whether for picture houses, theatres, broadcasting, television, or any other purpose.”
Plaintiff did not copyright the story either in England or in the United States. His action is based on an alleged violation of his common-law copyright.
At the time that this contract was entered into between the plaintiff and Sound City Film, Ltd., it was also agreed that the plaintiff was to play the leading role in the film. Accordingly, a motion picture film was made in 1934 from the story of the plaintiff, with the latter playing the leading role, and the picture was exhibited in various places in England and in the United States. In fact, the evidence indicates that the plaintiff became aware of and knew, as early as 1936, that the film had been exhibited in the United States.
The evidence further indicates that there was no action on the part of the plaintiff for over 20 years after the execution of the afore-mentioned agreement. Under the terms of the agreement the plaintiff was to, and did, receive £500, in three installments, and the last one was paid in April, 1934. No further money was to be paid to this plaintiff.
*194 In 1949 he learned of the continued showing of this film on television in the city of New York and he did nothing about enforcing his rights which he claims to have had. In fact, nothing was done by this plaintiff until August, 1954, at which time he protested the use of this film on television in a letter addressed to the defendant, Unity Television Corporation, and laid claim to being the sole and exclusive owner of the film and rights arising therefrom.
Concededly, the defendant, Unity Television Corporation, licensed the picture to many television stations in this country during: the period from 1951 to 1954. At the trial evidence was adduced showing an open and notorious dealing with this film on the part of various individuals, although there is no clear showing as to who was the first individual with whom Sound City dealt in order to authorize the first showing of this film in the United States. As has been already indicated, the plaintiff did not at any time secure a statutory copyright. His action is based on the alleged violation of his common-law copyright.
At common law, independently of statute, an author has a property right in his intellectual production before it has been published and is entitled to redress against anyone who interferes with that right. (Jewelers’ Mercantile Agency v. Jewelers’ Weekly Pub. Co., 155 N. Y. 241; Daly v. Walrath, 40 App. Div. 220; Fashion Originators Guild v. Federal Trade Comm., 114 F. 2d 80; Holmes v. Hurst, 174 U. S. 82.)
However, the rule is well established that a general publication of a literary or other intellectual work, by consent of the author, terminates all common-law rights and, therefore, any person may publish and use it for his own benefit, unless it is protected by statutory copyright. This is so regardless of the intent of the author and neither can he regulate nor control the manner of republication or use by others. (Jewelers’ Mercantile Agency v. Jewelers’ Weekly Pub. Co., supra; Van Veen v. Franklin Knitting Mills, 145 Misc. 451; Universal Film Mfg. Co. v. Copperman, 218 F. 577; Daly v. Walrath, supra; Fashion Originators Guild v. Federal Trade Comm., supra; Holmes v. Hurst, supra; Hirsch v. Twentieth Century-Fox Film Corp., 207 Misc. 750; 18 C. J. S., Copyright and Literary Property, § 13; Press Pub. Co. v. Monroe, 73 F. 196.)
In the case of Jewelers’ Mercantile Agency v. Jewelers’ Weekly Pub. Co., (supra), plaintiff, the Jewelers’ Mercantile Agency, a corporation which collected information of the business and credit of persons in the jewelry trade, printed, such information twice a year in a “ reference book ’ ’, which it *195 furnished to such persons subscribing therefor, under a contract which designated the transaction as a “ loan ’ ’ of the volumes and provided that the information supplied should be confidential and should not be disclosed; that the title to the books should remain in the agency, that the books should be returned upon expiration of the subscription and that the agency might terminate the contract and take back the books on returning the amount of the unexpired subscriptions. The defendant Jewelers’ Weekly Publishing Co. appropriated from the agency’s reference book certain material information and used it in a competing publication of its own. Thereupon plaintiff brought suit to restrain such use and relied upon its comm on - Iuav rights. It was held that the delivery of the book to the subscribers constituted a publication; that the common-law right of first publication Avas gone and plaintiff could not maintain the action.
At page 247 of the court’s opinion there is the following: ‘ ‘ An invention, a painting or a book is the property of its creator. He may keep it for his OAvn exclusive use or enjoyment if he sees fit. The public has no greater right to it, however useful it may be, than it would have to any other part of his personal property. But if he once publishes it, his property right in it is gone and everyone may make use of it.”
Again, at page 251, the court said: ‘ ‘ It will be observed that the general rule which we have quoted from Coppinger, asserts, first, that to expose for sale is to constitute publication. It is not necessary that the booh be actually sold; it is sufficient if it be offered to the public. The act of publication is the act of the author, and cannot be dependent upon the act of the purchaser. The actual sale of a copy is eAÚdence that it has been offered to the public, but that fact may also be shoxvm by other evidence.” (Emphasis supplied.)
Again, at page 254, the court concluded: “ But our examination leads us to the conclusion that the present state of the law is that if a booh be put within reach of the general public, so that all may have access to it, no matter ivhat limitations be put upon the use of it by the individual subscriber or lessee, it is published, and what is known as the common-law copyright, or right of first publication, is gone.” (Emphasis supplied.)
Keeping in mind the quoted language of the court in Jeivelers’ Mercantile Agency v. Jewelers’ Weekly Pub. Co. (supra), this court has carefully considered the language of the agreement between plaintiff and Sound City Film, Ltd., particularly that portion of paragraph “ 1 ” thereof, where the Sound City Film, Ltd., was given the license to sell, exhibit, lease, let on hire, *196 rent or otherwise dispose of, deal with or exploit all films ” and, again, in paragraph “ 6 ” thereof, where Sound City Film, Ltd., was given “ liberty to publish and exhibit in any languages a brief synopsis or description of .the story as originally written ^ # * and- to use any lines or excerpts from the said story for titles and/or sub-titles and to publish in serial form 'in any daily or weekly newspaper or magazine, the story of ‘ Menace ’ # * * ”.
When the language last quoted is weighed in the light of the language used by the court in Jewelers’ Mercantile Agency v. Jewelers’ Weekly Pub. Co. (supra), it appears that this last cited case is conclusive as to the questions raised in the case at bar. At page 251, the court said: 1 ‘ It is not necessary that the book be actually sold; it is sufficient if it be offered to the public.” Certainly the language of the agreement, hereinabove quoted, clothes Sound City Film, Ltd., with the right to sell and rent all films based on or adapted from the story of the plaintiff. In addition, Sound City Film, Ltd., was given the right to publish the original story in any newspaper or magazine. It seems clear to this court that all of this constitutes a publication of the story of the plaintiff and the film adapted therefrom, resulting in his loss of the common-law copyright, which was his until publication was authorized.
The proof is clear that, at least as to the motion picture produced by Sound City Film, Ltd., in which the plaintiff was the leading actor, there were open and notorious dealings on the part of various individuals. As early as 1936 plaintiff knew that the film was being exhibited in the United States. Again, in 1949, plaintiff knew that the film was being exhibited in New York City and, in 1952, he personally saw it on television. Despite this knowledge plaintiff failed to take any steps, or do anything, to attempt to enforce his alleged rights. It was not until August 27, 1954, when, for the first time, a letter was written on behalf of the plaintiff asserting certain rights.
This brings the court to the further contention of the defendants that the plaintiff was guilty of laches in enforcing his rights, if he had any.
Laches has long been regarded as inexcusable delay in asserting a right and usually involves prejudice resulting from such delay. Neglect for an unreasonable and unexplained length of time to assert a right, taken in conjunction with lapse _ of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as basis for laches in court of equity. Of course, each case must depend on its own circumstances and the question is addressed to the sound dis *197 cretion of the court. (Haynes & Co. v. Druggists’ Circular, 32 F. 2d 215.) Where a plaintiff has had knowledge of the existence of certain rights, or might have acquainted himself ■with them by the use of reasonable diligence, it would be inequitable to permit the plaintiff to assert them if the lapse of time is so great as to prejudice the defendant as to his defense. (Halstead v. Grinnan, 152 U. S. 412.)
Applying these rules to the behavior of the plaintiff in delaying taking action to enforce his claims, this court is convinced that the plaintiff was clearly guilty of laches.
For the reasons above stated, judgment is directed in favor of the defendants and the complaint is therefore dismissed.
The case was tried without a jury and findings of fact and conclusions of law were waived by both parties.
At the close of the case of both defendants, plaintiff moved to strike out the testimony of the witnesses Kandel and Baker. The court reserved decision of this motion and now denies same.
All other motions, decision of which was reserved, which are inconsistent with the disposition hereof, are hereby denied.
This constitutes the decision of the court in accordance with section 440 of the Civil Practice Act.