### EVERETT O. FISK & CO., Inc., v. FISK TEACHERS' AGENCY, Inc., et al.

(Circuit Court of Appeals, Eighth Circuit. December 17, 1924.)

No. 6652.

1. **Trade-marks and trade-names** ⟐➝33—**Trade-name cannot be assigned, except as incident to sale of business.**

A trade-name cannot be assigned, except as an incident to the sale of the business and good will in connection with which it has been used.

2. **Trade-marks and trade-names** ⟐➝32—**Right to exclusive use of trade-name held lost by permitting its use by others.**

Complainant for many years has conducted a business in Boston under the trade-name "Fisk Teachers' Agency." It has also, through so-called licenses, authorized the use of such name by local agencies established in many other cities, which it does not own, and with which it has no connection, except through such licenses and contracts under which they cooperate with each other and are listed in complainant's advertisements, for which they pay a percentage of receipts. Through such arrangement the trade-name has lost its distinctiveness as the trade-name of complainant, and has come to be associated by patrons and the public with the several local agencies with which they deal. *Held*, that by permitting its use for so long a time by others, for a monetary consideration, complainant lost the right to protection in its exclusive use as its own trade-name.

Appeal from the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Suit in equity by Everett O. Fisk & Co., Inc., against the Fisk Teachers' Agency, Inc., and others. Decree for defendants, and complainant appeals. Affirmed.

Ralph W. McCrillis, of Denver, Colo., for appellant.

Horace N. Hawkins, of Denver, Colo. (B. F. Reed and Robert W. Steele, Jr., both of Denver, Colo., on the brief), for appellees.

Before LEWIS, Circuit Judge, and MUNGER and MILLER, District Judges.

MUNGER, District Judge. This suit was brought to enjoin the use of a corporate name, the plaintiff claiming it to be its trade-name. The bill was dismissed, and the plaintiff has appealed. The plaintiff below was Everett O. Fisk & Co., a Massachusetts corporation, claiming a priority to the use of the trade-name, "Fisk Teachers' Agency." The defendants were M. E. Shuck and his wife and a corporation of Colorado, organized by Mr. Shuck under the name of "The Fisk Teachers' Agency, Inc."

From the pleadings and the evidence it appeared that Everett O. Fisk in 1884 established at Boston, Mass., what was called the Boston Teachers' Agency. The general object of the business was finding positions for teachers and teachers for positions. A few years later Mr. Fisk associated Mr. William B. Herrick with him as a partner in the business, under the former firm name. This name was changed in 1890 to that of the "Boston, New York & Los Angeles Teachers' Agency," and in 1891 to "Boston, New York, Chicago, Chattanooga, Portland, and Los Angeles Teachers' Agency." In 1892 the firm name was changed to "Fisk Teachers' Agency," and in 1893 the firm transferred its business to an incorporation under the laws of Maine by the name of "Everett O. Fisk & Co., Incorporated." In 1917 this corporation transferred the business to the plaintiff, a corporation of Massachusetts, known as "Everett O. Fisk & Co." Mr. Fisk has been associated with all of these firms and corporations and has had the chief financial interest in them. The name "Fisk Teachers' Agency" has been used by the plaintiff and its predecessors as a trade-name since 1893.

For many years the plaintiff has had contracts with individuals in pursuance of which these persons have conducted a business similar to that of the plaintiff, at various cities in the United States, such as New York, Syracuse, Philadelphia, Pittsburgh, Birmingham, Memphis, Chicago, Kansas City, Denver, Portland, Oregon, Berkeley, Cal., and Los Angeles, under the name "Fisk Teachers' Agency." In general, by these contracts the plaintiff has given the right to use the trade-name "Fisk Teachers' Agency," agreed to furnish office stationery, advertising circulars, and blank forms for registration of teachers and positions, and to include the name of the local office in the general advertising sent out by plaintiff. In return the persons conducting the local offices have agreed to pay to plaintiff a share of the gross proceeds of the business, and to be subject to the plaintiff's directions as to relationship with "other Fisk Agencies." The local offices own whatever property is used in the business, and have complete control over the conduct of the

business, except as the contract limits it. The method of operating, as it has been established under these contracts and with the approval of the plaintiff, is about as follows:

The person holding the local office makes personal solicitation of officers of educational institutions for the privilege of furnishing applications of teachers for positions to be filled, and solicits teachers to make application through the local office for such positions as they desire to fill. Advertising is also made of the nature of the service sought to be rendered. There seems to be an understanding that the local office is to limit its main efforts to the territory that is nearer to that office than to the other offices, but each office, whether of the plaintiff at Boston, or any of the others, may seek to fill positions in any school, regardless of geographical location, especially if the teacher or school officer wishes the services of some particular office. For the services rendered a fee is charged, mainly based upon a percentage of the annual salary of a teacher who has secured a position as a result of the efforts of the plaintiff or of the other local offices.

The plaintiff has been a liberal advertiser, especially in educational journals and in pamphlets and circulars distributed to school officers and teachers. For many years these advertisements have usually had a heading of "The Fisk Teachers' Agencies," and often, but not always, followed by the words "Everett O. Fisk & Co., Proprietors," and then followed by a list of the street addresses in the various cities of the local offices. The stationery and circulars furnished to the local offices, or used by the plaintiff, usually have had a list of all the offices printed as a part of the headings. One of the local offices established by the plaintiff was at Denver, Colo., in 1897. Mr. Ripenburg conducted this office until 1914, when he made a contract for the sale of the business to the defendant M. E. Shuck, and a contract was made between the plaintiff and Mr. Shuck, similar to the contracts as to local offices which has been mentioned. Mr. Shuck was given the entire control of the office as far as local matters were concerned, but was made subject to the plaintiff as to his relations with "other Fisk Agencies." The contract was made for a period of 8 years and provided that Mrs. M. E. Shuck should inherit Mr. Shuck's right, if he became incapacitated from continuing the work. Mr. Shuck agreed to pay to the plaintiff 20 per cent. of the cash receipts. In September, 1921,

Mr. Shuck refused to be longer bound by the contract, and with his wife and a relative organized the defendant corporation at Denver, under the laws of Colorado by the name "The Fisk Teachers' Agency, Inc." Since that time the corporation has conducted a business of finding and filling positions for teachers, in a manner similar to that of the plaintiff and the local offices which have been mentioned.

[1] The foundation of the plaintiff's claim is that the name "Fisk Teachers' Agency" is its trade-name, by which its services are advertised and known. It claims, also, that it has operated throughout the United States under this trade-name by means of licensed agencies, each known as "Fisk Teachers' Agency." The proofs establish the use of the trade-name by the plaintiff itself since 1893. The use of the same trade-name by the many local offices which have been mentioned has continued for a great number of years. The plaintiff was not the proprietor of these local offices, and the managers of them were not the agents of the plaintiff. They were owned and managed by those having them in charge, who alone were responsible for their conduct, except for the contractual obligations to the plaintiff. The plaintiff did not undertake to sell its business, or a part thereof, when it entered into these contracts for the conduct of these local offices, if it could be said that it might sell the right to conduct them. See Messer v. The Fadettes, 168 Mass. 140, 142, 46 N. E. 407, 37 L. R. A. 721, 60 Am. St. Rep. 371. The plaintiff's attempted license of the right to use its trade-name was ineffective, because a trade-name cannot be assigned, except as an incident to the sale of the business and good will in connection with which it has been used. Kidd v. Johnson, 100 U. S. 617, 620, 25 L. Ed. 769; United Drug Co. v. Rectanus Co., 248 U. S. 90, 97, 39 S. Ct. 48, 63 L. Ed. 141; Hanover Milling Co. v. Metcalf, 240 U. S. 403, 414, 36 S. Ct. 357, 60 L. Ed. 713; Macmahan Pharmacal Co. v. Denver Chemical Co., 113 F. 468, 475, 51 C. C. A. 302; Independent Baking Powder Co. v. Boorman (C. C.) 175 F. 448, 451; Spiegel v. Zuckerman (C. C.) 175 F. 978, 984; Lea v. New Home Sewing Mach. Co. (C. C.) 139 F. 732, 733; Bulte v. Iglehart Bros., 137 F. 492, 498, 70 C. C. A. 76; Dietz v. Horton Mfg. Co., 170 F. 865, 871, 96 C. C. A. 41; Rodseth v. Northwestern Marble Works, 129 Minn. 472, 476, 152 N. W. 885, Ann. Cas. 1917A, 257; Falk v. American West Indies Trading Co., 180 N. Y. 445, 450, 73 N. E. 239, 1 L. R. A. (N. S.) 704,

105 Am. St. Rep. 778, 2 Ann. Cas. 216; 38 Cyc. 867.

[2] The evidence shows that the use of the plaintiff's trade-name by the many local offices, under the sanction of contracts made by the plaintiff assuming to license the use of the trade-name, has caused the name to lose its distinctiveness as the trade-name of the plaintiff. The service rendered to teachers and officers of schools has for many years represented generally to such persons and to the public, not the efforts, the experience, or the responsibility of the plaintiff, but of the persons conducting these local offices. As was said in Powell v. Birmingham Vinegar Brewing Co., 2 Ch. D. (L. R. 1896) 54, 73: "There is another way in which a name originally a good trade-name may lose its character and become publici juris; i. e., when the first person using the name does not claim the right to prevent others from using it, and allows others to use it without complaint. The name then comes to denote the article and nothing more; the name becomes publici juris, and any one is at liberty to make the article, and call it by the name by which it is usually known." The question of abandonment of a trade name or mark is a question of intent (Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 31, 21 S. Ct. 7, 45 L. Ed. 60; Baglin v. Cusenier Co., 221 U. S. 580, 598, 31 S. Ct. 669, 55 L. Ed. 863; Hanover Milling Co. v. Metcalf, 240 U. S. 403, 419, 36 S. Ct. 357, 60 L. Ed. 713), and abandonment is not necessarily to be inferred from mere failure to prosecute infringement (Actiengesellschaft, etc., v. Amberg, 109 F. 151, 48 C. C. A. 264; Menendez v. Holt, 128 U. S. 514, 523, 9 S. Ct. 143, 32 L. Ed. 526; Ansehl v. Williams [C. C. A.] 267 F. 9, 13; Williams v. Adams, Fed. Cas. No. 17,711), but may be inferred from disuse, lapse of time, and other circumstances evidencing the intention to discontinue its distinctiveness (French Republic v. Saratoga Vichy Co., 191 U. S. 427, 437, 24 S. Ct. 145, 48 L. Ed. 247; Royal Baking Powder Co. v. Raymond [C. C.] 70 F. 376, 381; Eiseman v. Schiffer [C. C.] 157 F. 473; Blackwell v. Dibrell, Fed. Cas. No. 1,475; Dietz v. Horton Mfg. Co., 170 F. 865, 872, 96 C. C. A. 41; Brower v. Boulton [C. C.] 53 F. 389; Cohen v. Nagle, 190 Mass. 4, 11, 76 N. E. 276, 2 L. R. A. [N. S.] 964, 5 Ann. Cas. 553; Corkran, Hill & Co. v. A. H. Kuhlemann Co., 136 Md. 525, 533, 111 A. 471, 474).

The intention of the plaintiff has been plainly manifested by the formal contracts and its acquiescence in the performance of these contracts, whereby, for a monetary consideration, it has for a long time allowed its trade-name to represent to the public the business of others. After thus misleading the public, it is not in position to ask the aid of a court of equity to protect the reputation of that name as an indication of the plaintiff's services.

This conclusion makes it unnecessary to consider the effect of the representations in the plaintiff's advertisement, contrary to the fact, that it is the proprietor of these local offices. See Manhattan Medicine Co. v. Wood, 108 U. S. 218, 2 S. Ct. 436, 27 L. Ed. 706; Worden v. California Fig Syrup Co., 187 U. S. 516, 23 S. Ct. 161, 47 L. Ed. 282.

The decree will be affirmed.