## MACLOON v. VITAGRAPH, Inc., et al.

Circuit Court of Appeals, Second Circuit. February 4, 1929.

No. 217.

Max D. Steuer, of New York City (Ben Herzberg, of New York City, of counsel), for appellant.

Thomas & Friedman, of New York City (Joseph H. Hazen and Morris Ebenstein, both of New York City, of counsel), for appellees Warner Bros. Pictures, Inc., Vitagraph, Inc., and Vitaphone Corporation.

Howard E. Reinheimer, of New York City, for appellees, Schwab, Hammerstein, Mandel, Romberg, and Malem Corporation.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. This suit seeks to restrain the public exhibition of the motion picture version of the Desert Song, with words and music mechanically reproduced in synchronism thereof. On August 26, 1927, the appellant contracted with the Malem Corporation, which had obtained all the rights of the authors to the Desert Song, and who took a copyright thereof, for the "sole and exclusive" right to reproduce the play on the living stage in the United States west of and including Denver, and in Canada west of and including Winnipeg. It was agreed to reproduce the play exactly as it had been given in New York City on the living stage. The term of the contract was "so long as the appellant produced the play for not less than 10 weeks in any one year. Article XII of the contract provided:

"It is expressly agreed that stock, motion picture and all other rights except the right of first class stage production limited to the territory above mentioned shall remain in the owner" (Malem Corporation).

On May 4, 1928, the authors and owners of the copyright, on the one hand, and the appellee Warner Bros., Pictures, Inc., on the other, contracted for the purchase and sale of the motion picture rights to the Desert Song and the mechanical rights to record the words and music thereof for reproduction in synchronism or time relation with the motion picture. That contract, among other things, granted "the exclusive, complete, and entire motion picture rights, including the common-law and statutory copyright in the motion pictures throughout the entire world, together with the benefits of the copyright, in such musical play, the title and theme thereof, and the remedies held therein with respect to such motion pictures" to the Warner Bros. Pictures, Inc. It warranted that the owners had in no way "conveyed, granted, mortgaged, incumbered, restricted, or hy-

pothecated or otherwise disposed of, to or in favor of any other individual, firm, person or corporation whatsoever" the motion picture rights and rights to record and reproduce mechanically the words, music, and theme of the play. And it is affirmatively shown that at the time the Warner Bros. Pictures, Inc., entered into the agreement, it did not know of the existence of the appellant's contract. A search in the Copyright Office revealed no assignment or the license of rights thereunder recorded there. It paid a very substantial consideration, and must be regarded as a bona fide purchaser for value without knowledge of the appellant's contract. Shortly after entering into the contract, Warner Bros. Pictures, Inc., commenced the production of the motion picture and records of sound for use synchronously with the reproduction of the picture and expended a very considerable sum of money prior to the institution of this suit.

The appellant bases her right to obtain injunctive relief, as prayed for, upon the theory that, because she has a contract, granting to her exclusive rights to use the Desert Song in a stated territory upon the living stage, that the law implies a negative covenant, as part of her contract, which forbade the owners contracting with others, granting motion picture rights, together with the so-called vitaphone rights or motion talking pictures, in competition with the appellant's living stage production. Her argument is based upon the principle of Manners v. Morosco, 252 U. S. 317, 40 S. Ct. 335, 64 L. Ed. 590, and Harper Bros. v. Klaw (D. C.) 232 F. 609, that there is implied in such a contract a negative covenant on the part of the grantor not to use the ungranted portion of the copyright estate to the detriment, if not destruction, of the licensed estate.

But the parties contracted otherwise. By article XII of the contract, the appellant consented expressly that stock, motion picture, and all other rights, except the rights of a first-class stage production, limited to the territory granted her, remain in the owner. By express provision the parties have rendered inoperative the beneficial rights which the appellant might otherwise have gained from the implied negative covenant within the rule announced in the cited cases. The owner, reserving the rights to "stock, motion pictures and all other rights," assuredly intended that it may make use of them. It was fair notice to the appellant of such intention. Such rights, so reserved, were clear enough in expressing the intent of the owner that it was granting only the rights upon the living

stage, and did not intend to embrace or carry with it the motion picture or the vitaphone rights. When asked, upon the argument, counsel for the appellant readily conceded that the term "motion pictures" employed in article XII included the talking motion pictures herein referred to.

We need not, therefore, be concerned with any difference, if difference there be, between talking motion pictures and what has been heretofore commonly referred to as motion pictures. Equity will not infer a negative covenant, except where equity and justice requires, and such a covenant must be clearly implied and understood by all the parties. It should not be implied, unless it is indispensable to carry the intention of the parties into effect. Delaware & Hudson Canal Co. v. Pennsylvania Coal Co., 8 Wall. (75 U. S.) 276, 19 L. Ed. 349; Kennerley v. Simonds (D. C.) 247 F. 822. Implied promises are cautiously raised, and, where a contract is clear enough as to the parties' intentions, such promises should not be inferred, nor should injunction compel performance. The law always favors the free and unrestricted use of property, and doubts and ambiguities should be resolved in favor of the natural right to such free use and enjoyment, and against restrictions thereof. To accede to the appellant's contention of a negative restriction would be to impose upon the exercise of the appellees' right ambiguity and uncertainty as to the parties' intention. It would render meaningless clause XII of the contract.

In Manners v. Morosco, and Harper Bros. v. Klaw, supra, the parties to the contract were the parties in suit. The rights of bona fide purchasers for value without notice were not involved. This injunctive relief is sought against appellee, Warner Bros. Pictures, Inc., as strangers to the appellant's contract with the owner. A subsequent purchaser ordinarily is bound only when he takes with actual or constructive knowledge of a covenant of prohibition, which forbids the transfer of rights to others. This applies to restrictive covenants. High on Injunctions, § 1151 (a). Moreover, nowhere in the contract did the owner purport to grant a license to appellee Warner Bros. Pictures, Inc., to produce the Desert Song on the living stage, and the appellant's rights are confined to such a production. The so-called talking motion picture or vitaphone rights were regarded as separate and distinct, for the appellant and the owner so contracted. No rights in equity arose in support of the appellant's claims. New York Bank Note Co. v. Hamilton Bank Note Co., 180 N. Y. 280, 73 N. E. 48; Daly v. Walrath, 40 App. Div. 220, 57 N. Y. S. 1125. Under the circumstances, it is quite obvious that separate equities arose in favor of Photo-Drama Motion Picture Co. v. Social Uplift Film Corp. (C. C. A.) 220 F. 448; Brady v. Reliance Motion Picture Corp. (C. C. A.) 229 F. 137.

Order affirmed, with costs.