KANE v. ROXY THEATRES CORPORA-
TION.

CONTINENTAL BANK & TRUST CO. OF
NEW YORK v. ROXY THEATRES
CORPORATION et al.
No. 382.

Circuit Court of Appeals, Second Circuit.
May 15, 1933.

AUGUSTUS N. HAND, Circuit Judge
dissenting.

Proskauer, Rose & Paskus, of New York City (Alfred L. Rose and Alfred Appel, both of New York City, of counsel), for appellant.

Cravath, De Gersdorff, Swaine & Wood, of New York City (Frederick H. Wood, Bruce Bromley, and Stuart N. Updike, all of New York City, of counsel), for Irving Trust Co., as receiver of appellee Radio-Keith-Orpheum Corporation.

Joseph A. Schaines, of New York City, for appellee Samuel L. Rothafel.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The order appealed from in this consolidated cause denied the receiver's application for an injunction restraining the Radio-Keith-Orpheum Corporation (hereafter referred to as R. K. O.) from using the name "Roxy," but granted a petition, filed by R. K. O., which sought relief against the receiver for the Roxy Theatres Corporation to the extent of permanently enjoining and restraining the corporation and its receiver from using the name "Roxy" or any simulation or variation thereof, as the name or any part of the name of its theatre at Seventh avenue between Fiftieth and Fifty-First streets, borough of Manhattan, city of New York, or any other theatre, except that it or its receiver may use the corporate name of the appellant in or in connection with any theatre owned or operated by it, provided said corporate name, as so used, is not displayed conspicuously either within or without the theatre. It forbade the use of the name "Roxy," "Roxy's Gang," "Roxy's Program," or "Rothafel's Program" in connection with its motion picture, musical, or dance presentations or entertainment or in connection with radio broadcasts either within or without the theatre, and forbade advertising within or without the theatre using the name of Rothafel or Roxy in connection with the operation of the theatre.

Samuel L. Rothafel obtained, under the nickname of Roxy, a valuable reputation in the entertainment business. On June 26, 1925, he, with others, organized the Roxy Theatres Corporation, and became its president and a director. A site was purchased at Fiftieth street and Seventh avenue in New York City, upon which a theatre was built having a seating capacity of 6,000. It was called the Roxy Theatre. On May 15, 1928, the trade-mark "Roxy" was granted to the corporation on an application filed August 31, 1927. This application was signed by Rothafel as president of the corporation. He became the manager and conducted the business of the corporation under a contract of employment dated July 31, 1925. The name "Roxy" has continuously been used in the operation of the theatre, and a large business has been established. The name was conspicuously displayed on large signs, permanently placed on three sides of the building, and widely advertised in the daily newspapers throughout the metropolitan district. It was also widely advertised by broadcasting over the radio. In financing the building there were issued $4,250,000 of first mortgage bonds; $2,500,000 of second mortgage notes, which, together with the stock bore the title of the Roxy Theatre. The name had become strongly identified with and advertised in connection with this theatre.

The employment contract provided that Rothafel would render services to the corporation as the director of the motion picture theatre "about to be constructed * * * and to be designed and known as the Roxy Theatre," at $2,000 a week plus 10 per cent. of the net profits. An option was granted to the corporation for an extension of the contract for five years. The contract provided:

"6. If for any reason whatsoever, whether by limitation of time or otherwise, this contract shall terminate, the Corporation agrees that it shall not have the right to continue to use the name of 'Roxy' as part of the name of said theatre, except that if it shall continue such use of the name, it shall pay for the privilege and license of using such name, a sum equal to ten per cent (10%) of the net profits derived by the Corporation from the said theatre, the building and the operation thereof, computed as in this contract provided to be paid * * * as provided in subdivisions (b) (c) and (d) of Article 4 hereof, such payments and accounts to continue for so long a time, without limitation whatsoever, as the name 'Roxy' shall be used as part of the name of said theatre. * * * 8. Rothafel hereby grants to the Corporation the right, during the term hereof, to use his name and the name 'Roxy' and the name 'Roxy's Gang' and 'Roxy's Program,' and 'Rothafel's Program' in connection with the business and operation of said

theatre and said building, and also to use his portrait and physical likeness in connection therewith as well."

Rothafel continued employment under the 1925 contract until January 29, 1931, when a contract was made which provided that for the consideration of the sum of $5 and "of the mutual rescission to the extent herein provided," the employment was canceled and terminated March 29, 1931. It provided for the exchange of releases and stated:

"Third. Rothafel hereby permits Corporation to continue the use of the name 'Roxy' on the theatre * * * for the period between March 29, 1931 and September 11, 1932, but no longer. Rothafel waives his right to compensation for said use provided: (a) that the Corporation beginning with September 12, 1932 forever discontinues the use of said name 'Roxy' on the theatre, or in connection with its musical presentations, or in its corporate name, or in any manner or connection whatsoever. (b) That the Corporation on or before September 11, 1932, amends its corporate charter by deleting the word 'Roxy' from its corporate name. *. * * In the event of a breach by Corporation of any of the foregoing requirements, Rothafel shall be entitled to compensation for said use, in accordance with the provisions in this respect contained in the contract annexed hereto as Schedule A (employment contract), but said compensation for any elapsed period shall be payable within ten (10) days after demand therefor by Rothafel, and Rothafel shall also be entitled to enforce any other rights and remedies against the Corporation that he may have, both in law and in equity, by reason of said breach."

On March 30, 1931, Rothafel entered into a contract of employment with R. K. O. and therein granted the use of the name "Roxy" for its new theatre at Forty-Ninth street and Sixth avenue, two blocks from the established Roxy Theatre; the name appearing in large electric signs and announced by advertisement. Both houses attract the same public, producing substantially the same form of entertainment.

■ Rothafel's contract of employment with the appellant grants the privilege and licenses the use of the name "Roxy." Paragraph 6 provides an exception and payment to Rothafel if the appellant should continue the use of the name "Roxy" after he left his association with it. The exception is not a provision for liquidated damages. It is a license to continue on condition that payment

be made as provided in the contract. Paragraph 8 does not contradict this. It deals with the privilege of using the names "Rothafel" or "Roxy" in connection with the operation of the theatre. Such an operation might indicate Rothafel personally was connected with it. When he left his association or the corporation's employment, such right ceased, but the good will and use of the trade-name applied to the theatre and could be continued after he left the corporation provided payment was made pursuant to paragraph 6. Booth v. Jarrett & Palmer, 52 How. Prac. 169. This contract provided that Rothafel was to be continuously paid for the use of the name "Roxy" for so long a time, without limitation whatsoever, as the name "Roxy" shall be used as part of the name of said theatre. If the theatre was not to use the name "Roxy" after the contract had terminated, it was meaningless to provide for compensation for Rothafel as it did. We think it was within the contemplation of the parties that the appellant would continue to use the name "Roxy" after the termination of the contract of employment. The contract has no clause which would grant injunctive relief on behalf of Rothafel in the event that the corporation should discontinue the use of the name "Roxy," and there is no negative covenant which forbids its use. But article 10 of the contract contains a negative covenant and provides for injunctive relief in favor of the corporation. Article 8, we think, should be construed so as not to take from the corporation the right to use its corporate name. Amer. Steel Foundries v. Robertson, 269 U. S. 372, 46 S. Ct. 160, 70 L. Ed. 317; Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769; Holmes, Booth & Haydens v. Holmes, Booth & Atwood Mfg. Co., 37 Conn. 278, 9 Am. Rep. 324.

■ The outstanding purpose of the contract of January 29, 1931, was to discontinue the Rothafel employment, but the rescission of his employment did not deprive the corporation of the right to use the name "Roxy." Holding, as we do, that the employment contract was the only source of the corporation's rights the proper construction of the termination contract forces the conclusion that the parties did not intend entirely to rescind all the terms of the employment contract and affirmatively to deprive the corporation of its good will and its corporate name. The contract provides for the rescission of the first contract only "to the extent provided." This is part of the consideration, and it presents the question of what part of the employment

contract of July 31, 1925, was left unrescinded. There continued the obligation to pay for the use of the name "Roxy" on the theatre, as provided in article 6 of the agreement of July 31, 1925, for it remained unrescinded. The corporation's right existed to continue the use of the name on the theatre and to pay for such use. If the corporation discontinued the use of the name "Roxy" and amended its corporate charter by deleting the word "Roxy" from its corporate name, it was promised to have free use of the name "Roxy" for the period between March 29, 1931, and September 11, 1932, but no longer. Article 3, upon which the appellee relied for the terms of cancellation, provides only that, in the event of a breach by the corporation of any of the requirements there mentioned, Rothafel would be entitled to compensation for such use in accordance with the provisions in this respect contained in the employment contract. But there was no promise in this agreement on the part of the corporation to discontinue the use of the name "Roxy." The proper interpretation of article 3 permitted the corporation to use the name "Roxy" free of charge for the limited period therein mentioned. The contract's purpose was to accelerate the expiration date of the employment agreement which Rothafel had with the corporation, and in return for that Rothafel permitted the corporation to use the name free of any liability to him to pay the contingent percentage, conditioned upon the performance of certain acts mentioned in article 3 by the corporation.

■ It is true the directors authorized the officers to execute an agreement to amend the first contract so that it would terminate on March 29, 1931, but this resolution did not authorize cancellation completely by amendment, but only that the personal obligations should end on March 29, 1931, and the corporation for a time be relieved of the condition of paying compensation for the exercise of its license to use the name "Roxy" on the theatre. If the contract went further, it was without authority of the board of directors. The first paragraph provides that the executory rights shall cease as if March 29, 1931, had been the date of expiration originally provided. There is no express relinquishment of the license, and none may be implied, for the implication of negative covenants is not favored. Macloon v. Vitagraph, Inc., 30 F.(2d) 634 (C. C. A. 2). Moreover, a release and the destruction of an important trade-name and good will of the corporation which cost very considerable sums must plainly appear. Commerce Trust Co. of Bal-

timore v. Chandler, 295 F. 241 (C. C. A. 1); Matter of Timmis, 200 N. Y. 177, 93 N. E. 522. We think the intention was otherwise. The parties apparently recognized that the corporation might not discontinue the use of the name "Roxy" or change its corporate name. Failure to do either, the parties said in article 3, revived the obligation to pay compensation as provided in the old contract, except that payment could be accelerated by Rothafel's demand.

■ We think it was not intended to end the license by this contract. The intention of the parties must be found within the language of the contract, and much of the testimony taken before the master was irrelevant. The right to the injunction must be found in the written contract. Under the circumstances, the use of the name "Roxy" by the appellant in its theatre and advertising was not a fraud upon the public. Booth v. Jarrett & Palmer, supra.

■ We think the appellant was entitled to some of the relief it prayed for. The name "Roxy" had become associated with the business of the appellant, and its use by the appellee on its nearby theatre should be prohibited. The right to use the name granted to the corporation is a license. The continued use of the corporate name must be protected. American Steel Foundries v. Robertson, 269 U. S. 372, 46 S. Ct. 160, 70 L. Ed. 317. Whatever rights the appellee may have in the name "Roxy" necessarily are subject to the prior rights of the appellant. They may not use the name "Roxy" on a competing theatre. Holmes, Booth & Haydens v. Holmes, Booth & Atwood Mfg. Corp., 37 Conn. 278, 9 Am. Rep. 324; Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769. It would be unfair competition to do so. It cannot do indirectly that which it could not do directly. The appropriation of the name "Roxy" by the appellee is equivalent to an appropriation of the corporate title of the appellant under the circumstances, and equity will enjoin such unfair appropriation of good will. De Nobili Cigar Co. v. Nobile Cigar Co., 56 F.(2d) 324 (C. C. A. 1); Dobbs & Co. v. Cobbs Haberdasher, Inc., 226 App. Div. 372, 235 N. Y. S. 422.

■ The injunctive relief granted to the appellant will be limited to restraining the use of the name "Roxy" to designate the theatre which is in competition with the appellants. The appellee is not restrained from advertising its employment of "Rothafel" or "Roxy," but it must do so in a manner which will

avoid confusing its theatre with that of the appellant.

█ Jurisdiction is sustained for this suit is ancillary to the main suit. Hume v. City of New York, 255 F. 488 (C. C. A. 2).

Decree reversed.

AUGUSTUS N. HAND, Circuit Judge (dissenting).

I agree with the rest of the court that the contract of employment entered into between the Roxy Theatres Corporation and Samuel L. Rothafel on July 31, 1925, was the sole basis of the former's right to use the name "Roxy" for its theatre. But I do not think that the contract of January 29, 1931, can reasonably be construed to have only the limited operation which the opinion of the court attributes to it.

The agreement of January 29, 1931, provides in part:

"For and in consideration of the sum of five dollars ($5.00) by each of the parties to the other in hand paid, receipt whereof is hereby mutually acknowledged, and of the mutual rescission to the extent herein provided of the agreement hereinafter referred to as Schedule A, and of the mutual covenants herein contained, the parties agree as follows:

"First: The agreement between Corporation and Rothafel, dated July 31st, 1925, a copy of which is annexed hereto as Schedule A, and made a part hereof, shall, on March 29th, 1931, be cancelled and terminated, and the rights of both parties thereunder, insofar as they are still executory, shall cease after said date, as if said March 29th, 1931 had been the date of expiration originally provided for herein.

"Second: The parties agree to deliver, and each acknowledges receipt of a general release executed and delivered simultaneously herewith, running from each to the other, from all claims and things to and including the date hereof, except the obligations of this agreement, and any compensation and profits that may be due and owing by the Corporation to Rothafel, under the agreement Schedule A.

"Third: Rothafel hereby permits Corporation to continue the use of the name 'Roxy' on the theatre located on the northeast corner of Fiftieth Street and Seventh Avenue, in the Borough of Manhattan, City, County and State of New York, for the period between March 29th, 1931, and September 11th, 1932,

but no longer. Rothafel waives his right to compensation for said use provided:

"(a) That the Corporation, beginning with September 12th, 1932, forever discontinues the use of said name 'Roxy' on the theatre, or in connection with its musical presentations, or in its corporate name, or in any manner or connection whatsoever. * * *

"In the event of a breach by Corporation of any of the foregoing requirements, Rothafel shall be entitled to compensation for said use, in accordance with the provisions in this respect contained in the contract annexed hereto, as Schedule A, but said compensation for any elapsed period shall be payable within ten (10) days after demand therefor by Rothafel, and Rothafel shall also be entitled to enforce any other rights and remedies against the Corporation that he may have, both in law and in equity, by reason of said breach."

This contract is drawn, as it says, to rescind the contract of employment "to the extent herein provided." What the precise extent of the rescission is appears from the first clause of the agreement, which provides that the rights of both parties under the contract of employment are terminated "insofar as they are still executory." The force of this clause is strengthened by the provision in the second clause whereby the parties grant each other releases from all obligations except those which arise out of the contract of cancellation itself, and matured debts of the corporation to Rothafel for services already rendered by him. The third clause embodies the affirmative rights and obligations created by the contract of cancellation itself, which are that Rothafel grants the corporation free use of the name "Roxy" for a fixed period, on condition that the latter abides by the cancellation contract and ceases to exercise its rights under the terminated contract of employment. Following this clause there is a sentence expressing the rights which shall accrue to Rothafel in the event that the corporation fails to fulfill these requirements.

It is perfectly true that the contract nowhere contains any direct statement of a covenant by the corporation to discontinue calling its theatre the "Roxy." In so far as construction of this contract is concerned, the nub of the appellant's argument is that, in the absence of any such express negative covenant, the appellant is entitled to continue using the name "Roxy," provided that it pays the "compensation" stipulated in the sentence following the third clause. Macloon v. Vita-

graph (C. C. A.) 30 F. (2d) 634, is relied upon as establishing that this court will not, in general, infer a negative covenant where none is expressed. That principle I think in no way affects the present case. Its application is to cases where one party seeks to restrain another from doing acts which, apart from any contract, the latter would have a perfect right to do, and where the contract itself contains no express agreement by the latter to refrain from such acts. But here all members of the court are agreed that the appellant has no right, independent of these contracts, to use the name "Roxy," and that "the employment contract was the only source of the corporation's rights" in this particular. The right of the corporation to continue to use, and the duty of Rothafel to continue to allow the corporation to use, the name "Roxy" were executory rights and obligations under the contract of 1925, even though these particular rights and obligations might persist beyond the period of Rothafel's actual employment. By the first clause of the agreement of 1931 those rights and obligations were terminated. How, then, was there any occasion for expressing, or is there now any necessity for implying, an express negative covenant by the corporation to refrain from doing what it no longer has any shadow of a right to do?

The third clause in no way militates against this conclusion. It gives the appellant the right to continue to use the name for a fixed period. But that this is a right which arises not from any continuation of the earlier contract, but purely from the contract of 1931 itself, is clear not only from the provisions of the second clause already referred to, but by the very language of the grant: "Rothafel hereby permits, * * *" etc. Furthermore, the contract of 1931 permits use of Rothafel's name during a period subsequent to the termination of the contract of 1925.

The final sentence (immediately preceding the witness clause) expressly recognizes the contractual duty of the corporation to abide by the contract of cancellation which terminates its rights under the earlier contract. This sentence imposes a new duty on the corporation in the event of a "breach" by it of any of the requirements listed under the third clause. The mere fact that a part of the contract of 1925 is incorporated by reference in no way suggests that this is the sole right which Rothafel has in the event of a breach; indeed, the contrary expressly appears at the end of the sentence where Rothafel reserves "any other rights and remedies against the Corporation that he may have, both in law and in equity, by reason of said breach."

In view of the foregoing circumstances, I think that the District Judge correctly held that "the cancellation contract of January 27, 1931, wholly terminated the right of the defendant to call its theatre the Roxy—save only, as specified in the cancellation contract itself, for the period from March 29, 1931, to September 11, 1932." And I think, as he does, that "it would be twisting words out of their ordinary sense to construe paragraphs 1 and 3 of the cancellation contract or the contract in its entirety in any other way."

I do not find the appellant's argument that the contract, so construed, is ultra vires because not authorized by the board of directors convincing. The resolution passed by the board authorized the officers of the corporation "to execute on behalf of this Corporation an agreement with Mr. S. L. Rothafel amending the present agreement with Mr. Rothafel, so that the same shall terminate on March 29, 1931, and neither party shall be under any obligation to the other thereafter, with the right of this Corporation to use the name 'Roxy' in connection with the theatre up to and including September 11, 1932, without any compensation to Mr. Rothafel therefor. * * *"

I am unable to appreciate how the officers could be authorized to "terminate" the contract on March 29, 1931, so that "neither party shall be under any obligation to the other" and still be without authority to cancel and rescind the contract as of that date. How can either party cease to "be under any obligations to the other thereafter" unless the contract is wholly terminated? Certainly the obligation Rothafel was under to permit the use of his name, and the duty of the corporation to pay for that use, were personal obligations. How could the corporation acquire the right to free use of Rothafel's name for a fixed period without surrendering the right to continue using his name, the termination of which right all parties knew Rothafel to be bargaining for? The contract of 1931 seems to me to be carefully drawn within the limits authorized by the board of directors.

Nor do I think there is any merit in the appellant's contention that this contract as construed by the court below is ultra vires under section 20 of the New York Stock Corporation Law (Consol. Laws, c. 59). That section states that:

"A stock corporation * * * with the

consent of the holders of record of two-thirds of its outstanding shares entitled to vote thereon may sell and convey its property, rights, privileges and franchises, or any interest therein or any part thereof. * * * Before such sale or conveyance shall be made such consent shall be obtained at a meeting of the stockholders called pursuant to section forty-five."

Despite the categorical language of this statute, it is well settled that it does not apply to transactions in the ordinary course of business of a corporation. Epstein v. Gosseen, 235 App. Div. 33, 256 N. Y. S. 49; see Matter of Timmis, 200 N. Y. 177, at pages 181, 182, 93 N. E. 522. Certainly a theatre is acting in the regular course of its business when it contracts for the services of theatrical producers and acquires and disposes of the right to use the names and good will of such persons. In so far as section 20 requires a vote of stockholders, it was designed to cover cases where a sale constitutes a "practical dissolution" of a corporation, or where the sale "changes the character of the business of the vendor corporation." See Matter of Fulton, 257 N. Y. 487, at pages 492, 494, 178 N. E. 766, 768, 79 A. L. R. 608. A change in the theatre's name will neither constitute a dissolution of the appellant corporation nor radically alter the nature of its business.

For the foregoing reasons I think that the order of the District Court was correct and should be affirmed.