RITZ ASSOCIATES, INC., Plaintiff, *v.* RITZ-CARLTON HOTEL COMPANY, INC., Defendant.

Supreme Court, Special Term, New York County, June 25, 1962.

*Paul, Weiss, Rifkind, Wharton & Garrison (Samuel J. Silverman* and *Gerald D. Stern* of counsel), for plaintiff. *Turk, Marsh, Ouchterloney & Kelly* for defendant.

JACOB MARKOWITZ, J. These are motions by plaintiff and defendant for summary judgment.

In January, 1925, Ritz-Carlton Restaurant & Hotel Company, a predecessor of defendant, Ritz-Carlton Hotel Company, Inc., entered into a written agreement with Parkab Corporation and Ritz Tower, Inc., which granted to said two corporations the right to use the name " Ritz Tower " for an apartment hotel and restaurant building to be erected at 57th Street and Park Avenue, on condition that the Ritz-Carlton Restaurant & Hotel Company be paid a specified sum for each year of the term for which the right was given. The licensor agreed that its President and its manager would supervise the management and operation of the apartment hotel and restaurant. This agreement was cancelled in 1932 and a new agreement entered into between the Ritz-Carlton Company and the new owner of the 57th Street building, which provided that the former, " in so far as it has the legal right to do so " gave to said owner the right to use the name " Ritz Tower " for the 57th Street building on payment of a stipulated yearly fee. The owner was given the right to terminate the agreement at any time and give up the use of the name. Various agreements reducing the stipulated yearly fee were entered into from time to time. In 1940, New York Towers, Inc., became the owner of the 57th Street building. There is no evidence that it expressly assumed the licensing agreement. However, it paid the stipulated license fee as long as it owned the property. In 1956, plaintiff purchased the property from New York Towers, Inc. There is likewise no evidence in the record that *it* ever expressly assumed the license agreement. It paid the stipulated license fee for about two and a half years and then took the position that it was not legally bound to make further payments for the right to use the name " Ritz Tower ".

Plaintiff seeks summary judgment declaring that it has the right to use the names " Ritz Tower " or " Ritz " for its building without making any payment therefor to defendant. It also seeks dismissal of defendant's counterclaim. The counterclaim

seeks a declaration that the 1932 agreement, as modified, is binding upon plaintiff and that the latter may not terminate the agreement without discontinuing the use of the name " Ritz Tower ". It also seeks a declaration that (1) defendant is entitled to terminate the agreement because of an alleged substantial change in the character of the use of plaintiff's building, which defendant claims violates the agreement, and (2) that plaintiff, in the event of such termination, may no longer use the name " Ritz Tower ". Defendant cross-moves for summary judgment dismissing the complaint and granting the judgment sought in its counterclaim.

It is unnecessary to determine whether or not plaintiff impliedly assumed the obligations of the 1932 agreement, as modified. This is so because the agreement is void, as against public policy. It contains no provision for supervision of the operation of the plaintiff's building or restaurant by defendant or any of its agents. Defendant's building and its operation have had no connection whatsoever with plaintiff's building or its operation at any time since 1932. Concededly, defendant and its predecessors exercised no supervision or control over plaintiff's building since 1932. The 1932 agreement thus granted what is known as a " naked license ", purporting to entitle the owner of the 57th Street building to use defendant's distinctive trade-mark or name without any transfer of defendant's business and without any control by defendant of the nature or quality of the services rendered by the owner of the 57th Street building under defendant's trade-mark or name. Such a license is void, because of its tendency to confuse the public, which believes it will receive, in the building bearing defendant's name, services of the same nature and quality as those rendered in defendant's own hotel and restaurant (*Falk* v. *American West Indies Trading Corp.*, 180 N. Y. 445; *Fisk & Co.* v. *Fisk Teachers' Agency*, 3 F. 2d 7; *Prichard Co.* v. *Consumers Brewing Co.*, 136 F. 2d 512, cert. denied 321 U. S. 763; *Broeg* v. *Duchaine*, 319 Mass. 711; 3 Restatement, Torts, § 755 [1938]; 1 Nims, Unfair Competition and Trade-Marks, § 17, p. 86 [4th ed.]; Wehringer " Trade Mark Licenses ", 47 T. M. Rep. 287). The fact that the 1932 agreement may have been a compromise agreement, as defendant claims, is immaterial. A compromise agreement may not grant a naked license. In the case of *Kane* v. *Roxy Theatres Corp.* (65 F. 2d 324) the question of whether a naked license was involved does not appear to have been raised. The opinions do not mention any such question.

Defendant claims that if plaintiff assumed the 1932 agreement it is estopped from claiming that the agreement is void. This

is not correct. The authorities relied on merely held that a licensee is estopped from denying that the licensor has the right to the patent or mark which he is licensing. They do not hold that the licensee is estopped from asserting that the licensing agreement itself is void as against public policy because it purports to grant a naked license. "The agreement between the parties is not controlling, in these matters. The licensor and licensee may agree between themselves that such and such is a valid and binding contract, and the licensee may even make regular royalty payments. However, no agreement or no payment of royalty is sufficient to create a valid license." (Lahart, Control — "The Sine Qua Non of a Valid Trademark License ", 50 T. M. Rep. 103, 109 [1960].) The language as to an estoppel in the case of *Prichard* v. *Consumers Brewing Co.* (136 F. 2d 512, *supra*) does not relate to an estoppel to claim that a naked license is void. The court was referring only to an estoppel to deny the licensor's right to the mark or name which was being licensed.

The question still remains whether, even if the license agreement is void, defendant may enjoin plaintiff from using the name " Ritz Tower ". Defendant has stipulated that for the purposes of this action it will not claim that " confusion presently exists in the public mind between defendant's business operations and the business operations of the plaintiff ". In view of this concession, there appears to be no valid basis for enjoining plaintiff from using the name " Ritz Tower " without defendant's consent. This is all the more true in view of the fact that the grant of a naked license is regarded as an abandonment of defendant's right to the use of the licensed name (see Nims, *op. cit. supra,* p. 87; Wehringer, *op. cit. supra*; Seidel, A. L. I., Handbook on Trade Marks, p. 113 [1959]; Isaacs, Traffic in Trade-Symbols, 44 Harv. L. Rev. 1210–1211 [1931]; *Fisk & Co.* v. *Fisk Teachers' Agency,* 3 F. 2d 7, *supra*; *Morse-Starrett Prods. Co.* v. *Steccone,* 86 F. Supp. 796). The record contains strong additional evidence of abandonment, viz., the omission of the word " Ritz " from defendant's present building " Carlton House ", which replaced the old " Ritz-Carlton Hotel " after the latter was torn down in 1951, and the widespread use of the word " Ritz " by numerous establishments, in this city and elsewhere, unconnected with defendant. The contention that the word " Ritz " is still used in connection with the bar and restaurant in Carlton House is entitled to little weight on the question of abandonment.

The court accordingly holds that plaintiff, even on the assumption that it impliedly assumed the 1932 agreement, is entitled

to summary judgment declaring that it may continue to use the name " Ritz Tower ", without paying anything to defendant and without the latter's consent.

Plaintiff's motion is granted and the cross motion is denied.