NORDEN RESTAURANT CORPORATION, Respondent, v SONS OF THE REVOLUTION IN THE STATE OF NEW YORK, Appellant.

First Department, March 13, 1980

### APPEARANCES OF COUNSEL

*William T. Livingston, III,* of counsel *(Bachner, Tally & Mantell,* attorneys), for appellant.

*Joseph D. De Salvo* of counsel *(Greenspan & Jaffe,* attorneys), for respondent.

### OPINION OF THE COURT

Ross, J.

The corporate defendant, formed in 1883, is a patriotic

organization dedicated to keeping alive the best traditions of the "Spirit of '76". This not-for-profit corporation is the owner of historic Fraunces Tavern, a five-building, interconnected complex located in lower Manhattan. In 1904, defendant acquired this property through a bequest from a descendant of an officer on General George Washington's staff, who was present at the Commander-in-Chief's farewell ceremony conducted at Fraunces Tavern. Through the society's efforts, this building has been successfully restored to its original "revolutionary" character. The defendant now maintains its offices there and is curator of an on-premises museum.

Plaintiff leases the main building and portions of adjoining buildings of this complex and operates a restaurant therein. The Norden family has operated this food emporium for over 40 years. The plaintiff has at various times, through various media and accuterments of plaintiff's trade, advertised the name of this restaurant as Fraunces Tavern. The existing lease signed in mid-December, 1977, effective, January 1, 1977, provides in pertinent parts:

§ 3.04 "The business conducted by Tenant in the premises is only to be conducted under the name 'Fraunces Tavern Restaurant' or such other name as Landlord shall from time to time approve in writing".

§ 40.01 "Tenant covenants and agrees that in any and all advertising of the business of Tenant * * * Tenant will in no way state or imply that the Buildings are in any way the property of Tenant or of the restaurant operated by it in the premises * * * The right to use the name 'Fraunces Tavern Restaurant' in connection with Tenant's business shall be limited to the restaurant business conducted in the premises and to no other business or location".

Plaintiff, as lessee, instituted this action for, *inter alia,* water damages and to enjoin defendant from interfering with proposed interior remodeling. Defendant, alleging breach of lease in a third counterclaim, sought to enjoin plaintiff from using the name Fraunces Tavern, and from prosecuting its Federal trade-mark application. Special Term denied defendant-appellant's motion for partial summary judgment on the third counterclaim and granted plaintiff's cross motion to the extent of dismissing this counterclaim.

■ The question then presented by this appeal is whether Special Term erred in denying defendant landlord's motion for partial summary judgment enjoining plaintiff lessee's use of

the service mark Fraunces Tavern. On the facts presented herein, injunctive relief cannot be granted summarily.

■ The terms "service mark" and "trade-mark" are related concepts and both are governed by identical standards (*Boston Professional Hockey Assn. v Dallas Cap & Emblem Mfg.,* 510 F2d 1004; *West & Co. v Arica Inst.,* 557 F2d 338). "Service mark" has been defined as a mark used in the sale or advertising of services to identify the services of one person and distinguishes them from services of others. "Trade-mark", although similarly defined, identifies a manufacturer's or merchant's goods or products. (Lanham Trade-Mark Act [60 US Stat 427]; US Code, tit 15, § 1127; see, also, General Business Law, § 360, subds [a], [a-i].) The twofold congressional intent for protecting trade-mark is: " 'to protect the public so it may be confident that, in purchasing a product bearing a particular trade-mark which it favorably knows, it will get the product which it asks for and wants to get. Secondly, where the owner of a trade-mark has spent energy, time, and money in presenting to the public the product, he is protected in his "investment" from its misappropriation by pirates and cheats' " (7 NYL For 91, 92).

In this court defendant argues that through its efforts the mark "Fraunces Tavern" has become synonymous with its organization and with the maintenance and preservation of a landmark steeped in historical significance. Additionally, the restrictive terms and conditions in the current lease between defendant and plaintiff prohibit the latter's use of this mark. Therefore, the mark has derived its sole uniqueness from these labors and the society is entitled to the protection and goodwill flowing therefrom. Plaintiff similarly argues that the consuming public identifies the mark in dispute as connoting a distinguished restaurant. The record on appeal divulges conflicting substantial claims by both parties. It is axiomatic that both cannot claim the benefits of this individual mark.

■ Each controversy in this area of the law must be decided on its own merits since the circumstances surrounding each are not readily duplicated. "Although this type of litigation has been said to present mixed questions of law and fact * * * the emphasis, and rightly so, we believe, seems to have been placed upon the fact pattern of each situation [citations omitted]. Each case * * * must be decided on its facts" (*Dell Pub. Co. v Stanley Pub.,* 9 NY2d 126, 133).

■ Courts have long recognized that noncommercial organi-

zations are entitled, under proper circumstances, to enjoin the pirating of a mark by a junior user even though not in direct competition. "Equity may also shield the thrust by business into the kind of legal rights acquired in areas entirely removed from commercial activities" *(Cornell Univ. v Messing Bakeries,* 285 App Div 490, 492, affd 309 NY 722).

■ ■ Under any circumstances, whatever the mark, the more viable it is in the current market, the greater is its need for protection from unwarranted incursions. "The real injury * * * 'is the gradual whittling away or dispersion of the identity and hold upon the public mind of the mark or name by its use on noncompeting goods. The more distinctive or unique the mark the deeper is its impress upon the public consciousness and the greater its need for protection against vitiation or dissociation from the particular product in connection with which it has been used' [citation omitted]" *(Tiffany & Co. v Tiffany Prods.,* 147 Misc 679, 681-682, affd 237 App Div 801, affd 262 NY 482). Without question the mark Fraunces Tavern is recognized by the consuming public in the local market place, if not the national. Whether the common man recognizes this mark as synonymous with an historic setting, or as a restaurant, cannot be decided in the absence of a complete trial. For this reason our dissenting colleagues' reliance on *Stogop Realty Co. v Marie Antoinette Hotel Co.* (217 App Div 555) is misplaced. There, a full hearing was concluded before a determination was rendered, and, moreover, the subject premises were specifically constructed for the use to which they were put. In *Stogop Realty Co. v Marie Antoinette Hotel Co. (supra)* the court found that the name "Hotel Marie Antoinette" had become inseparably connected with the building, and had become synonymous with the hotel business through the efforts of plaintiff's predecessor. Here, Fraunces Tavern was built for the use the name implies and has been so utilized in that manner since 1763. On the record before us it cannot summarily be said that the name Fraunces Tavern has become "appurtenant to and inseparably connected" with the defendant society. These incompatible assertions must be resolved at trial.

■ The defendant, as landlord and owner of a building in which plaintiff undertook a commercial venture, possesses a valued interest in its building's name, which is entitled to protection. However, as a result of steady and gradual usage and development, such a name may acquire a secondary

meaning as indicating the particular business housed in the building. (60 NY Jur, Trademarks, § 100.) Where such mark has acquired this distinctive meaning, the user thereof is entitled to the same protection as would be accorded a "technical" trade-mark. "Secondary meaning can be established by showing that notwithstanding the absence of an arbitrary, fanciful or coined expression, a trade-mark or trade name has, through exclusive use and advertising by one entity, become so associated in the mind of the public with that entity or its product that it identifies the goods sold by that entity and distinguishes them from goods sold by others." *(Allied Maintenance Corp. v Allied Mechanical Trades,* 42 NY2d 538, 542, n 2.)

The ability of a mark to acquire a secondary meaning will rarely be established overnight. Such is uniquely attainable through a gradual evolution. Acceptance thereof will be acknowledged when a substantial section of the buying public can equate that mark with a particular business and no other (3 Callmann, Unfair Competition, Trademarks and Monopolies [3d ed], § 77.4).

The issue then is whether either party through its individual efforts can be credited with ascribing a secondary meaning to the mark Fraunces Tavern. After a trial if it can be determined that this mark exclusively identifies a particular business, and the buying public would thereby be confused, then that business is entitled to the service mark protection *(Matter of Playland Corp. v Playland Center,* 1 NY2d 300).

■ In trade-mark law, as in other matters of equity, good faith is an indispensable component. No right of ownership can be acquired in a service mark which is not registered or adopted in good faith (US Code, tit 15, § 1064; 60 NY Jur, Trademarks, § 17). Defendant argues that this element is lacking. The existing lease was negotiated throughout 1977, and it is alleged that a major portion of these discussions centered on utilization of the mark Fraunces Tavern. However, prior to signing of this document, plaintiff on October 28, 1977, caused to be served an application with the United States Patent and Trademark Office seeking to register the service mark Fraunces Tavern.* The society maintains this procedure was commenced at a time when plaintiff was aware

---

* This mark was subsequently registered on September 11, 1979.

that its use of the service mark was in dispute, and moreover violated the restrictive conditions of the lease.

The question of good faith, or the lack thereof, is an issue, under these circumstances, which cannot be disposed of summarily. The familiar refrain that the key to summary judgment is "issue finding rather than issue determination" *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395) is persuasively presented in the record before us.

■■ This court enunciated the rule with clarity, when it said "summary judgment is a drastic remedy which should be withheld whenever there is any doubt as to the existence of a triable or arguable issue of fact *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395)". *(Pollard v Meyer,* 61 AD2d 766, 767.) Here we have substantial questions of fact that cannot be disposed of in advance of trial.

Accordingly, the order of Supreme Court, New York County (HUGHES, J.), entered on July 24, 1979, which, *inter alia,* denied defendant-appellant's motions to dismiss the second and fourth causes of action contained in the complaint and denied defendant's motion for partial summary judgment on the third counterclaim in appellant's answer, seeking to enjoin plaintiff's use of the service mark Fraunces Tavern, and granting plaintiff's cross motion to the extent of dismissing the third counterclaim should be, insofar as appealed from, affirmed, without costs and without disbursements.

KUPFERMAN, J. (dissenting in part). Fraunces Tavern on Pearl Street in lower Manhattan is a landmark. It was operated by Samuel Fraunces, and it was here that General George Washington in 1783 said good-bye to his revolutionary comrades in arms. On the 100th anniversary of Washington's farewell, there was organized the patriotic organization, Sons of the Revolution, the defendant-appellant herein, whose purpose was to keep alive the spirit of '76. It is a not-for-profit corporation.

In 1904, as the result of a bequest, the appellant was enabled to purchase the building comprising Fraunces Tavern. It had since its organization been working to restore and preserve the building, and it has maintained it in a condition closely approximating the original architecture and appearance. It has acquired ownership of neighboring buildings which are interconnected with the tavern, and a museum is there maintained. Portions of the tavern have been rented for

operation as a restaurant, with the appellant as landlord since 1907. In 1937, the plaintiff-respondent became the tenant of the restaurant, with the current lease becoming effective January 1, 1977 for a term ending October 31, 1991. The lease contains provisions which give the appellant the right to control, in terms of quality, taste and fashion, the operation of the restaurant business.

Among other provisions in the lease are the following:

"Section 3.04. The business conducted by Tenant in the premises is only to be conducted under the name 'Fraunces Tavern Restaurant' or such other name as Landlord shall from time to time approve in writing pursuant to the request of Tenant."

"Section 6.02. Landlord reserves the right to name the Building and to change the name or address of the Building at any time and from time to time".

"Section 29.01. Tenant, recognizing that the Buildings have been maintained as an historical landmark and as an additional inducement to Landlord to enter into this Lease, covenants and agrees that at all times (i) the business to be conducted at, through and from the premises and the kind and quality of the merchandise, food, and services offered in the conduct thereof will be reputable in every respect, (ii) the sales methods employed in said business, as well as all other elements of merchandising, will be dignified and in conformity with the highest standards of practice obtaining among superior type stores, shops and restaurants dealing in the same or similar merchandise, food and service or conducting a similar high-quality restaurant business in the Wall Street business district adjacent thereto, and (iii) the kind and quality of food and beverages and of the merchandise sold at, through or from the premises by Tenant shall be excellent in all respects, and (iv) the appearance of the premises (including the lighting and other appurtenances thereto), the appearance and deportment of all personnel employed therein, and the appearance, number, location, nature and subject matter of all displays and exhibits placed or installed in or about the premises, and of any signs, lettering, announcements, price schedules, tags or any other kinds or forms of inscriptions displayed in or about the premises, will be only such as does not meet with Landlord's reasonable disapproval and, if at any time reasonably disapproved by Landlord, Tenant shall remove the basis for such disapproval in such manner and within such reason-

able time as may be specified by Landlord, in a written notice by it to Tenant for such purpose. Landlord believes that the operation by Tenant of its business at the premises is, as of the date hereof, generally in conformity with the standards herein above in this Section 29.01 set forth."

"Section 39.04. Tenant shall remove all such lettering, improvements and modifications upon the termination of its Lease and shall repair any damage to the building or the sign occasioned thereby."

"Section 40.01. Tenant covenants and agrees that in any and all advertising of the business of Tenant conducted in or from the premises whether through written, typewritten, mimeographed or printed circulars, radio programs, notices in the public press and publications, signs or by means of any other advertising media, Tenant will in no way state or imply that the Buildings are in any way the property of Tenant or of the restaurant operated by it in the premises. Tenant further covenants and agrees that it will not alter or distort the account of any historical fact respecting the premises or the Buildings in any of its advertising through any of the above described media or through any other media. Advertising material used and paid for by Tenant should describe the business of Tenant conducted in the premises only as 'Fraunces Tavern Restaurant'. If Tenant, after warning that a violation of the above conditions has occurred, shall thereafter repeat the same or a similar violation, Landlord may require and Tenant covenants and agrees that it will immediately, at its sole cost and expense, retract any such statement, implication, or error of historical fact to which Landlord shall have made objection in any and all of the advertising media in which such violation shall have occurred. The wording of such retraction shall be submitted to Landlord before publication and Landlord's approval of such retraction in writing shall be obtained by Tenant which covenants and agrees that it will give to such retraction display or prominence equal to the display or prominence given to the advertising to which Landlord has taken exception as above set forth. *The right to use the name 'Fraunces Tavern Restaurant' in connection with Tenant's business shall be limited to the restaurant business conducted in the premises and to no other business or location, and such right shall terminate upon the expiration or earlier termination of this Lease.* Any regular doorman or person operating checking facilities on the premises

shall, labor conditions permitting, be costumed in Colonial Costume consisting of powdered wig, tailcoat, breeches, long hose and display buckles on shoes, so designed as to portray in true and authentic manner the dress in use during the era of the American Revolution." (Emphasis added.)

It is readily apparent that this is not a mere naked license discussed in *Ritz Assoc. v Ritz-Carlton Hotel Co.* (35 Misc 2d 425, affd without opn [but with one dissent], 19 AD2d 522, affd without opn 14 NY2d 670). It is obvious that by reason of ownership, intention, long usage and contract, the name Fraunces Tavern is the property of the defendant-appellant. It has acquired a "secondary meaning" indicating the defendant-appellant. (See Diamond, Untangling the Confusion in Trademark Terminology, 65 ABAJ pp 1523, 1525.) The right to use the name is inseparably associated with the building involved *(Stogop Realty Co. v Marie Antoinette Hotel Co.,* 217 App Div 555).

In this litigation, the plaintiff sues, among other things, in the normal course of a tenant-landlord relationship, for water damage, a claim with respect to rent, etc. In addition, it contends that in connection with a grant of permission from appellant landlord to respondent tenant to construct a coatroom enclosure, there were impermissible conditions attached with respect to the use of the words Fraunces Tavern on items to be sold in the operation of the coatroom.

Among other things, the defendant-appellant landlord set forth various affirmative defenses and counterclaims, including a third counterclaim to declare its rights in the name Fraunces Tavern and to enjoin the respondent from prosecuting an application for a United States trade-mark in the name. In the interim, after the date of the order herein denying summary judgment to either side on a motion and cross motion, a certificate of registration was issued by the United States Patent and Trademark Office to the plaintiff-respondent tenant for a service mark for Fraunces Tavern. It is possible for a licensee such as the plaintiff to obtain a service mark as a "related company", pursuant to sections 5 and 45 of the Lanham Act (US Code, tit 15, §§ 1055 and 1127). (See Seidel, What the General Practitioner Should Know About Trademarks and Copyrights [4th ed], p 117.)

The landlord, by virtue of its lease, being in legitimate control of the usage of the mark, would therefore be a beneficiary of the registration, and the licensee could not use the

mark in advertising or labeling in any manner other than that specifically authorized by the licensor. (See Beran, An Introduction to Trademark Practice, ch III, § 4, pp 128-129.)

I would grant partial summary judgment to the defendant-appellant landlord on the third counterclaim, declaring its rights in the trade-mark. There does not seem to be any real dispute with respect to the right of the tenant to construct the cloakroom, and therefore summary judgment should be granted to the plaintiff-respondent on the second cause of action. However, the right to construct the cloakroom does not carry with it any rights with respect to any items to be sold therein with the name Fraunces Tavern used, without the permission of the landlord, subject to the terms of the lease.

FEIN and SULLIVAN, JJ., concur with Ross, J; MURPHY, P. J., and KUPFERMAN, J., dissent, in part, in an opinion by KUPFER-MAN, J.

Order, Supreme Court, New York County, entered on July 24, 1979, affirmed, without costs and without disbursements.